# AFFIDAVIT

I, Derek J. Hill being duly sworn, hereby depose and say:

## I. INTRODUCTION

1.  This affidavit provides a background into the investigation of Michael MARKUS, a.k.a. "Rattler." All of the facts stated herein are based upon my personal knowledge and the knowledge gained from other law enforcement agents involved in this investigation.

## II. CRIMINAL VIOLATIONS

2.  This affidavit is made in support of a request for the issuance of an arrest warrant for Michael MARKUS, a.k.a. "Rattler": Title 18, United States Code, Chapter 1, Section 2 (Principals – Aid and Abet); Title 18, United States Code, Chapter 40, Section 844(h), Use of Fire to Commit Any Felony; and Title 18, United States Code, Chapter 12, Section 231, Civil Disorder.

## III. EXPERIENCE AND TRAINING

3.  I am employed as a Special Agent/Certified Fire Investigator with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been employed in that capacity since September 2001. As part of my duties, I am responsible for investigating federal criminal violations of Title 18 of the United States Code, including violations of Chapter 40. I have been employed as a law enforcement officer since 1997 and have previously worked for the North Dakota Bureau of Criminal Investigation.

4.      I have investigated this case with agents from the North Dakota Bureau of Criminal Investigation and the Morton County Sheriff's Department.

5.      I have spoken to other agents, law enforcement officials, and other interested individuals about this investigation, and have read reports concerning the progress of the investigation. The statements contained in this affidavit are based on information that has been provided to me directly or indirectly by other law enforcement officers and agents, and law enforcement data. The information and conclusions expressed are also based upon my own experience and training as a law enforcement officer, and my personal involvement and knowledge gained during the course of this investigation.

6.      I have not stated each and every fact known to myself and other investigators involved in this investigation, but have described those significant facts related to Michael MARKUS, a.k.a. "Rattler."

## IV. DAKOTA ACCESS PIPELINE (DAPL)
### History of the DAPL

7.      The Dakota Access Pipeline (DAPL) is a 1,172 mile-long underground oil pipeline project in the United States. The route of the pipeline begins in the Bakken oil fields in northwest North Dakota and travels to an oil tank farm located near Patoka, Illinois.

8.      In April 2016, a camp was established on the Standing Rock Indian Reservation, as a location for individuals to gather and protest the pipeline. This camp quickly grew in size and expanded to areas to the north of the Standing Rock Indian Reservation on land owned by the U.S. Army Corps of Engineers.

### A. Cannon Ball Ranch

9. In September 2016, the Dakota Access Pipeline purchased the Cannon Ball located in southern Morton County. The Cannon Ball Ranch is a roughly 9,000-acre ranch that is located north of the Standing Rock Indian Reservation. Of significance to the Dakota Access Pipeline, the Cannon Ball Ranch land is where the pipeline construction will cross and the drill pad will be set up in preparation for the pipeline crossing under the Missouri River.

10. As the construction of the pipeline neared the Cannon Ball Ranch, protesters illegally set up another camp on the land owned by the Dakota Access Pipeline and in the ditches directly adjacent to Highway 1806. Protesters were informed that their camp was illegal and they were trespassing by being on the land. The presence of this particular camp caused the construction of the pipeline to be delayed as the pipeline could not continue to safely operate in the area occupied by the protesters. Additionally, with winter approaching, the camps within the Highway 1806 ditches were a public safety concern.

### V. OCTOBER 27, 2016 LAW ENFORCEMENT OPERATION
### A. Law Enforcement Operation

11. On October 27, 2016, law enforcement from various agencies, from both inside and outside of North Dakota, determined that for public safety they needed to remove the individuals who had unlawfully set up camp on the private land owned by DAPL on the east side of Highway 1806, where the pipeline was supposed to be laid, and

the camp sites that were situated in the ditches. The plan called for law enforcement to travel south down Highway 1806 and order the protesters off of the land. The protesters were told to move their camp to the south where they were being allowed to protest on U.S. Army Corps of Engineers land. While one team of law enforcement was going to travel south down Highway 1806, another team of law enforcement was going to approach Highway 1806 from the west on County Road 134.

### B. County Road 134 Fires

12. A bridge was located on County Road 134 approximately 1 mile west of the intersection of Highway 1806. Protesters had set up tents on the bridge and had also erected several rows of barricades on the west side of the bridge. These barricades initially consisted of stacked logs, fallen trees, tires and other miscellaneous items.

13. On the afternoon of October 27, 2016, law enforcement began to approach the County Road 134 Bridge. As law enforcement approached the bridge, individuals at the bridge were notified by other protesters that law enforcement was approaching. At this point, several protesters made their way to the County Road 134 Bridge and began to pour gasoline on the barricades. Approximately three (3) barricades were constructed on the west side of the bridge. The barricades were set on fire and these fires resulted in law enforcement having to stop their forward movement. The fires that were set resulted in a significant delay to law enforcement and prohibited the law enforcement group from meeting up with and assisting the law enforcement officers that were moving south down Highway 1806. Law enforcement had to wait for the

fires to be suppressed by firefighters and then had to wait for heavy equipment to clear the roadway.

### C. DAPL Aerial Photos

14. While law enforcement was conducting their operation, a helicopter that was being utilized by the Dakota Access Pipeline was monitoring the situation from the air. A passenger in the helicopter was utilizing a digital camera to document the operation and these digital photos were provided to law enforcement. I received a copy of these photos and reviewed them in an attempt to identify any individuals responsible for starting the fires or participating in the civil disorder that occurred at the bridge.

15. Upon reviewing the digital photos, I was able to identify several individuals pouring what is believed to be gasoline on the barricades that had been erected on the west side of the County Road 134 Bridge. One of the individuals was seen getting out of a silver colored van, approach the barricades and pour gasoline on the barricades. The same individual also attempted to pour gasoline between the barricades in an attempt to connect the piles that were set up as barricades.

16. Based on the photographs, law enforcement was able to identify the silver van as being registered to Michael MARKUS. After obtaining MARKUS' identity, law enforcement was able to compare a photos of MARKUS on social media with the aerial photos and a positive identification was made.

### D. Michael MARKUS Interview

17. On January 12, 2017, Michael MARKUS was incarcerated in the Morton County Jail, North Dakota on a charge of criminal trespass. Myself and a Morton County Deputy met with MARKUS in the jail and conducted an interview of MARKUS. During the interview, MARKUS admitted to pouring the gasoline on the barricades and pouring gasoline in an attempt to connect the barricades once they were ignited. MARKUS denied being the individual who actually started the fire but added that the reason they started the fires was to "slow law enforcement down." MARKUS was shown photos of other individuals caught on digital photos pouring gasoline on the barricades and setting the barricades on fire and acknowledged being there when this occurred.

## VI. CONCLUSION

14. Based on my training and experience with various criminal investigations, my participation in this investigation, and the facts set forth in this Affidavit, I believe as it pertains to Michael MARKUS, a.k.a. "Rattler" that violations of Title 18, United States Code, Chapter 1, Section 2 (Principals – Aid and Abet); Title 18, United States Code, Chapter 40, Section 844(h), Use of Fire to Commit Any Felony; and Title 18, United States Code, Chapter 12, Section 231, Civil Disorder have occurred and I formally request the issuance of an arrest warrant authorizing agents to arrest Michael MARKUS, a.k.a. "Rattler."

Further your affiant sayeth not.

_____
Derek J. Hill
Special Agent with ATF

SUBSCRIBED and SWORN to before me this 23rd day of January, 2017, in Bismarck, North Dakota.

_____
Charles S. Miller, Jr.
United State Magistrate Judge