UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:17-CR-030 |
| | ) | |
| v. | ) | |
| | ) | |
| Michael Mateo Markus, a/k/a Rattler, | ) | |
| | ) | |
| Defendant | ) | |

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE

Mr. Michael Markus, Defendant, by counsel, submits this reply to the United States' response (Docket No. 230) to Mr. Markus' request for compassionate release in light of the COVID-19 pandemic and his pre-existing, chronic conditions that increase his vulnerability for severe illness and death while in the custody of the Bureau of Prisons. The circumstances in this matter are truly compelling and extraordinary, and the Court should grant Mr. Markus' request.

The Government argues that the Court should deny Mr. Markus's request for compassionate release because the Government reads Mr. Markus' medical records from the BOP as "devoid of any indication that he suffers from disease or ailments that increase his risk for death if he should be exposed to the COVID-19 virus." Docket No. 230 at 12. The Government's position completely ignores that Mr. Markus' records show that when Mr. Markus entered prison in November 2018 he already suffered from hypoglycemia, obesity, and multiple pre-existing injuries. See Docket No. 150, 14-15. The Government also does not address the fact that the records submitted by the parties show that Mr. Markus tested positive for tuberculosis in

1

November 2019 and has, since his November 2018 self-surrender to the custody of the BOP, exhibited signs of new and persistent conditions including edema in both limbs and multiple skin infections. These new conditions are well-documented, as is the Bureau's failure or refusal to provide Mr. Markus with additional testing in order to diagnose and treat the underlying causes of these conditions.

The medical records provided by both parties show that BOP did not treat Mr. Markus for a latent tuberculosis infection following a positive TB test in 2019. The medical records also show that after reporting severe swelling in both legs, Mr. Markus did not receive further diagnostic testing or treatment other than compression socks once the BOP ruled out an acute heart condition as the cause of his ongoing edema. Mr. Markus cannot access testing and/or treatment for his tuberculosis, edema, hypoglycemia, borderline diabetes, or any other condition without cooperation and referral from the Bureau's health services, and it is clear that BOP has not as of yet provided such testing and treatment. Given the persistent nature of all of his conditions and the unknown underlying cause(s) or future prognoses for his tuberculosis, edema, and recurrent infections, there is no indication that Mr. Markus is expected to recover in the prison environment, nor that he can provide the necessary medical testing and care to treat or mitigate his conditions on his own. Mr. Markus is a tribal citizen – if released he will be able to obtain healthcare through Indian Health Services (IHS), which has a Farmington, New Mexico location within twenty miles of Mr. Markus' proposed address in Aztec, New Mexico.

Mr. Markus agrees that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *See, e.g., United States v. Raja*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v.*

*Eberhart*, 13-cr-0313, 2020 U.S. Dist. LEXIS 51909 (N.D.Cal. Mar. 25, 2020)(general concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for sentence reduction). Contrary to the government's characterization, Mr. Markus' request for release is not due to the terrifying but general risk of being imprisoned during an uncontrolled pandemic; rather, the petition is based on the heightened risk that the current active outbreak of COVID-19 in FCI Sandstone poses to Mr. Markus due to his obesity, lifetime history of smoking, prior diagnoses of sleep apnea, hypoglycemia, and borderline diabetes, as well as the recent onset of tuberculosis and persistent conditions including edema in both limbs and skin infections. It is these multiple pre-existing, chronic, and as yet untreated conditions that make Mr. Markus uniquely and personally vulnerable to contracting and suffering severe illness as a result of COVID-19.

  The government takes the position that Mr. Markus has no pre-existing conditions at all and that there is no risk to him because the United States Centers for Disease Control (CDC) has not issued warning or guidance regarding the risk of COVID-19 specifically for persons diagnosed with tuberculosis or edema. Docket No. 230, 11. The government's argument is that only the chronic medical conditions identified by the CDC as elevating a prisoner's risk of becoming seriously ill from COVID-19 may be considered by the Court as conditions that could meet the standard of "extraordinary and compelling reasons" for compassionate release. Not the compassionate release statute, the out-of-date Sentencing Guidelines Application note/policy statement, or any of the courts analyzing the law during the COVID-19 pandemic require a prisoner's health condition be specifically identified by the CDC as placing the prisoner at higher

risk in order for a court to consider that condition when analyzing a request for release under the compassionate release statute.

Tuberculosis is a contagious bacterial respiratory infection spread person-to-person through the air that can affect multiple bodily systems. *See* Exhibit 2, Docket No. 214. Tuberculosis is the 10th leading cause of death worldwide and since 2007 has been the leading cause of death from a single infectious agent, ranking above HIV/AIDS. *See* World Health Organization, *Global Tuberculosis Report 2020*, at 40, WHO (October 14, 2020).  COVID-19 is a contagious viral respiratory infection spread person-to-person through the air that can affect multiple bodily systems. While it is true that the CDC has not specifically identified tuberculosis as a condition placing persons at higher risk, it should be self-evident that people – including prisoners – who are infected with one contagious and deadly airborne respiratory pathogen will be at a higher risk from another highly contagious and deadly airborne respiratory pathogen. Because COVID-19 is a novel virus, there has been limited opportunity to study and document conclusions regarding the interaction between tuberculosis and COVID-19, but as a federal district court in California noted, the danger to Mr. Markus and other prisoners with tuberculosis is not speculative:

> One observational study studied the relationship of tuberculosis and COVID-19 in 36 confirmed COVID-19 patients. It found that "individuals with latent or active TB [Tuberculosis] may be more susceptible to SARS-CoV-249 infection." It also found that "COVID-19 disease progression may be more rapid and severe" in those with latent or active tuberculosis. It identified "tuberculosis history (both of active TB and latent TB) [as] an important risk factor for SARS-CoV-2 infection." The study noted that its findings are limited because it is based on a low number of cases.

*Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020)(citing Yongyu Liu, et. al., *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity* (March 2020), https://bit.ly/2Vj055Y.).

Courts have granted compassionate release to prisoners who suffer from serious medical conditions that make them particularly vulnerable to the COVID-19 virus, even if those conditions would ordinarily be manageable. *United States v. Ramirez*, 17-cr-10328-WGY, 2020 WL 2404858 (D. Mass. May 12, 2020)(granting compassionate release although medical conditions did not fall under the traditional definition of "serious" under BOP guidelines because COVID-19 outbreak is both terminal and incurable for a substantial subset of prisoners with pre-existing conditions). See, e.g., *United States v. Hunt*, No. 18-20037, 2020 WL 2395222 (E.D. Mich. May 12, 2020)(granting compassionate release to 30 year old with congestive heart failure, diabetes, and sleep apnea despite extensive criminal history and recidivism); *United States v. Foreman*, 3:19-cr-62, 2020 WL 2315908 (D. Conn. May 11, 2020)(finding that age (58), hypertension and obesity - not the most severe conditions - nonetheless made the defendant vulnerable and deserving of compassionate release in light of the COVID-19 cases at the facility); *United States v. Gonzalez*, No. 2:18-cr-232, Dkt. No. 834 (E.D. Wash. Mar. 31, 2020) (releasing defendant one month into a 10 month sentence in light of medical issues; ordinarily these conditions would be manageable but "these are not ordinary times").

In support of the argument against granting Mr. Markus compassionate release the Government points this Court towards the COVID-19 control and mitigation steps that the Bureau of Prisons has committed to taking; namely, that the Bureau is reducing transfers and visits, and that every prison is sanitizing cells and screening, testing, and isolating prisoners. Docket No. 230, 2-7. Evidence provided by the defense shows that the Bureau has continued to transfer prisoners between prisons and between units within FCI Sandstone, that the Bureau is not following the steps it has committed to (e.g., taking prisoners' temperatures, providing

5

additional cleaning and sanitation supplies), and that the conditions within the prison make social distancing and other preventative measures nearly impossible. *See* Exhibit 3, Docket No. 214. Further, some of the preventative steps the government outlined for the Court are outdated – the BOP resumed transfer of prisoners between facilities over the summer[1], and also recently issued a press release indicating that social visits would resume on October 3, 2020. *Bureau to Resume Social Visitation*, Bureau of Prisons, Sept. 30, 2020, *available at* https://www.bop.gov/resources/news/20200902_visitation.jsp#.

The United States emphasizes the efforts set forth in the Bureau's public statements issued over the summer regarding handling of the coronavirus without any specific reference to the efforts undertaken by FCI Sandstone before and during the current outbreak within the prison. The government's recitation of BOP's stated action plan misses the point: COVID-19 is a highly contagious and deadly novel coronavirus that the government concedes is actively infecting multiple prisoners at FCI Sandstone where Mr. Markus is held. A May 2019 Prison Rape Elimination Act (PREA) Audit shows that FCI Sandstone is a low-security prison designed to imprison 996 individuals, and that the facility had a population of 1131 prisoners in May 2019. *See* E. Richard Bazzle, Federal Bureau of Prisons Final PREA Audit Report for FCI Sandstone 2-3 (2019), *available at* https://www.bop.gov/locations/institutions/sst/prea_sst.pdf. As of October 25, 2020, FCI Sandstone imprisons 959 individuals. *See* https://www.bop.gov/locations/institutions/sst/index.jsp. Despite the Attorney General's directives to prioritize release of prisoners from low-security facilities, Sandstone remains nearly at full capacity. Of the 959 people imprisoned at Sandstone, the BOP reports that 8 prisoners are currently infected and that 174 have recovered.  On September 1, 2020 there were only four

---

[1] The Oklahoma City Federal Transfer Center (FTC) reports 36 active prisoner infections with 226 recovered, 35 active staff infections with 6 recovered, and 1 prisoner death as of October 25, 2020.

6

active prisoner cases of COVID-19 at FCI Sandstone, and the government's claim that FCI Sandstone is "managing the pandemic well" is belied by the fact that nearly twenty percent of the prisoners at FCI Sandstone have been infected with COVID-19 in less than sixty days.

## CONCLUSION

The United States concedes that there is an active COVID-19 outbreak at FCI Sandstone, the low-security facility housing Mr. Markus, who now has less than six months remaining on his thirty-six month sentence for Civil Disorder. The medical records make clear that Mr. Markus is personally and uniquely vulnerable to COVID-19 because of pre-existing, chronic conditions for which he cannot provide adequate self-care while in the prison environment, and that he has met his burden of demonstrating that the circumstances underlying his petition are truly compelling and extraordinary. For the reasons listed, those indicated in the Motion and Memorandum of law (Docket No. 214), and any others that may appear to the Court, Mr. Markus asks that the Court grant his request for Compassionate Release or Home Confinement.

Respectfully Submitted,
MICHAEL MARKUS
By Counsel

*s/ Sandra C. Freeman*
SANDRA C. FREEMAN
Law Office of Sandra C. Freeman, LLC
130 W. 5th Avenue
Denver, Colorado 80204
Telephone:	720-593-9004
Email:	sandra.c.freeman@gmail.com

## CERTIFICATE OF SERVICE

   I hereby certify that on October 25, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of this filing to following address:

Gary Delorme, Esq.
Assistant United States Attorney
William L. Guy Federal Building
220 East Rosser Avenue, Suite 372
Bismarck, North Dakota  58502
Email: gary.delorme@usdoj.gov


I further certify that I have mailed or served this filing with the non-CM/ECF Participant with this document via hand delivery:

Michael Markus #06280-073
FCI Sandstone
Federal Correctional Institution
P.O. Box 1000
Sandstone, Minnesota 55072


*s/ Sandra C. Freeman*
SANDRA C. FREEMAN
Law Office of Sandra C. Freeman, LLC.
130 W. 5th Avenue
Denver, Colorado 80204
Telephone:	720-593-9004
Email:		sandra.c.freeman@gmail.com